IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Innocent Nkwocha, | C/A No. 5:12-2703-MBS |
| Plaintiff, | |
| vs. | **ORDER AND OPINION** |
| South Carolina State University, | |
| Defendant. | |

On August 3, 2012, Innocent Nkwocha ("Plaintiff") filed this action in the Orangeburg County Court of Common Pleas against South Carolina State University ("Defendant") and David Jamison,[1] alleging a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"); denial of due process under the United States and South Carolina Constitutions; and defamation under the South Carolina Tort Claims Act, S.C. Code § 15-78-70. ECF No. 1. Defendant filed an answer on September 19, 2012. ECF No. 4. On April 23, 2013, Defendant filed a motion for partial summary judgment, ECF No. 17, to which Plaintiff responded on June 3, 2013, ECF No. 27. Defendant filed a reply, ECF No. 28, on June 7, 2013.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 D.S.C., the matter was referred to United States Magistrate Judge Paige J. Gossett for pretrial handling. On November 7, 2013, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grant Defendant's motion for partial summary judgment. ECF No. 34. Plaintiff filed objections on December 9, 2013, ECF No. 38, and Defendant filed a reply on December 27, 2013, ECF No. 39.

---

[1] The court notes that David Jamison was later dismissed as a Defendant through an amended complaint filed by Plaintiff, leaving Defendant South Carolina State University as the only named Defendant in the action. ECF No. 24.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the Stipulation of Facts filed by the parties on April 17, 2013. ECF No. 15. Plaintiff is a male of Nigerian national origin. Beginning in September 2000, Plaintiff was employed by Defendant in a faculty position in the Department of Business Administration. ECF No. 15 at 1. Effective July 5, 2002, Plaintiff began serving in a non-tenured, tenure-track position as Assistant Professor of Business. *Id.* Plaintiff applied for tenure during the 2007-2008 academic year, but his application for tenure was denied. *Id.* Plaintiff again applied for tenure during the 2009-2010 academic year. *Id.* Plaintiff and Defendant then entered into a Tenure Track Faculty Employment Agreement for the 2010-2011 academic year. *Id.* at 2.

On October 6, 2010, Plaintiff received a letter dated September 30, 2010 from Defendant's Vice President for Academic Affairs, Dr. Joyce Blackwell ("Dr. Blackwell"). *Id.* In her letter, Dr. Blackwell notified Plaintiff that his application for tenure was not recommended for approval. ECF No. 15-6 at 1. The letter also informed Plaintiff that pursuant to this denial, Plaintiff would be offered a one-year terminal contract, effective academic year 2011-2012. *Id.*

On October 27, 2010, Plaintiff sent a letter to Dr. Gwendolyn Wilson ("Dr. Wilson"), a member of the Faculty Grievance Committee, formally appealing his denial of tenure and requesting that the Faculty Hearing Committee be advised of his appeal. ECF No. 15-8. On November 16, 2010, Plaintiff emailed Dr. Wilson to inquire as to whether he could provide any additional information to support his appeal. ECF No. 15-10. Dr. Wilson replied that no additional information was needed. *Id.*

Thereafter, on February 22, 2011, Dr. Wilson informed Plaintiff via letter that "the University Hearing Committee voted not to hear your grievance over your failure to be promoted with tenure."

ECF No. 15-11. The letter further informed Plaintiff that the Faculty Hearing Committee concluded that his grievance did not raise a substantial issue as to the "denial of due process; violation of academic freedom; discrimination on the basis of race, gender, national origin, age or handicap; or unfair, arbitrary, and capricious action" necessary to require a hearing by the Faculty Hearing Committee. ECF No. 15-11. On February 28, 2011, Plaintiff received a letter from Dr. Blackwell informing Plaintiff that because his application for tenure was denied by both the University and the Faculty Hearing Committee, he would be offered a one-year terminal contact for employment that would terminate effective May 15, 2012. ECF No. 27-1 at 2.

Following the receipt of this letter, on April 7, 2011, Plaintiff signed a one-year terminal contract for employment during the 2011-2012 academic year, specifically beginning August 16, 2011 and ending May 15, 2012. ECF No. 15-14 at 1. The terms of the contract stated that Plaintiff "serves in an at-will capacity at the pleasure of the President." *Id.*

On August 25, 2011, Plaintiff dually filed a charge of discrimination with the South Carolina Human Affairs Commission ("SHAC") and the United States Equal Employment Opportunity Commission ("EEOC"). These charges asserted that Defendant discriminated against Plaintiff on the basis of his sex and national origin by denying him tenure. ECF No. 15 at 4. Plaintiff received his right to sue letter from the SHAC on April 3, 2012 and from the EEOC on June 20, 2012. *Id.* On August 8, 2012, Plaintiff filed this action in the Court of Common Pleas for Orangeburg County. *Id.* Defendant timely removed the action to federal court. *Id.*

## II. STANDARD OF REVIEW

**A.** *Summary Judgment Standard*

The court shall grant summary judgment if the movant shows that there is no genuine dispute

3

as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). A party may not create a triable issue of fact at summary judgment by contradicting deposition testimony with a subsequent affidavit. *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 438 (4th Cir. 1999).

### B. *Magistrate Judge's Report and Recommendation*

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

### III. DISCUSSION

### A. *Title VII Claim*

Defendant moves for summary judgment on Plaintiff's Title VII claim, contending that Plaintiff's Title VII claim is time-barred. In response, Plaintiff contends that his Title VII claim is

timely and that Defendant's motion for summary judgment should be denied.

## 1. *Legal Standard*

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e–2(a)(1). However, "[b]efore filing suit under Title VII, a plaintiff must exhaust [his or her] administrative remedies by bringing a charge with the EEOC." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000). This charge must be filed "within 180 days of the incident, or within 300 days of the incident if state or local proceedings are initiated." *Beall v. Abbott Labs.,* 130 F.3d 614, 620 (4th Cir.1997); *see also* 42 U.S.C. § 2000e–5(e)(1). "When the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal court." *McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 131 (4th Cir. 1994).

## 2. *Magistrate Judge's Report and Recommendation*

At the outset, the Magistrate Judge recognized that the applicable limitations period in this case is 300 days. ECF No. 34 at 4. The Magistrate Judge then recognized that the discrete act of discrimination alleged by Plaintiff is the denial of tenure. *Id.* In determining when this denial of tenure occurred for the purposes of a timeliness analysis, the Magistrate Judge relied on *Delaware State College v. Ricks*, 449 U.S. 250 (1980), in which the United States Supreme Court held that the denial of tenure occurs "at the time the tenure decision was made and communicated" to a plaintiff. ECF No. 34 at 4. The Magistrate Judge concluded that Plaintiff was informed of the denial of his application for tenure upon receipt of Dr. Blackwell's letter informing Plaintiff of this denial on

5

October 6, 2010. *Id.* Pursuant to this finding, the Magistrate Judge determined that the limitations period began to run on October 6, 2010. *Id.* Because Plaintiff filed his administrative charge on August 25, 2011, more than 300 days after receiving the October 6, 2010 letter, the Magistrate Judge concluded that Plaintiff's administrative charge is time-barred. *Id.* Accordingly, the Magistrate Judge recommended granting Defendant's motion for summary judgment as to Plaintiff's Title VII claim.

**3.** *Objections*

Plaintiff objects to the Magistrate Judge's determination that October 6, 2010 is the operative date for the commencement of the limitations period. Plaintiff contends that the holding in *Ricks* does not support a finding that Plaintiff's receipt of Dr. Blackwell's letter on October 6, 2010 is the date the denial of tenure occurred. ECF No. 38 at 3. Instead, Plaintiff contends that *Ricks* supports the conclusion that the letter received by Plaintiff on February 28, 2011 informing Plaintiff that he would be issued a one-year terminal contract is the appropriate commencement date for the limitations period. *Id.* at 5. Plaintiff contends that this letter communicated Defendant's "official position to plaintiff and . . . made [its] position apparent to Plaintiff." *Id.* Because Plaintiff filed his administrative charge on August 25, 2011, less than 300 days after receiving the February 28, 2011 letter, Plaintiff contends that the Magistrate Judge erred in determining Plaintiff's Title VII claim is time-barred. Accordingly, Plaintiff contends that the court should reject the Magistrate Judge's Report and Recommendation and deny Defendant's motion for summary judgment as to Plaintiff's Title VII claim.

**4.** *Analysis*

After careful review of the record and applicable legal authority, the court concurs with the

6

Magistrate Judge's recommendation that Plaintiff's Title VII claim is time-barred. It is undisputed that the applicable limitations period in South Carolina is 300 days after the occurrence of the alleged discriminatory act. It is also undisputed that the discriminatory act alleged by Plaintiff is the denial of tenure. However, the parties dispute when this alleged discriminatory act occurred. "A discrete retaliatory or discriminatory act 'occurred' on the day that it "happened.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). More specifically, in the context of the denial of tenure to a college professor, the United States Supreme Court has recognized that the "alleged discrimination occurr[s]–and the filing limitations periods therefore commence[s]–at the time the tenure decision was made and communicated to [the plaintiff]." *Ricks*, 449 U.S. at 258.

Here, the court finds that the tenure decision was made and communicated to Plaintiff upon Plaintiff's receipt of the letter from Dr. Blackwell on October 6, 2010. The letter specifically informed Plaintiff that his "application for tenure was not recommended for approval." ECF No. 15-6 at 1. The letter further informed Plaintiff that pursuant to this denial of tenure, he would receive a "one-year terminal contract, effective academic year 2011-2012." ECF No. 15-6 at 1. Plaintiff clearly understood the implications of this letter, as Plaintiff promptly filed a formal appeal requesting "an appeal of the letter [Plaintiff] received on October 6, 2010, which denied [his] application for tenure and promotion." ECF No. 15-8 at 2. Further, the filing of Plaintiff's appeal cannot toll the running of the limitations period. *See Ricks*, 449 U.S. at 261 ("[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods."). Indeed, the *Ricks* court recognized that "entertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative . . . [as] [t]he grievance procedure, by its nature, is a *remedy* for a prior decision,

not an opportunity to *influence* that decision before it is made." *Id.* (emphasis in original). Thus, the court finds that the tenure decision was made and communicated to Plaintiff upon receipt of the October 6, 2010 letter. As such, the court finds that the alleged discriminatory act, denial of tenure, occurred on October 6, 2010.

To the extent that Plaintiff contends that the holding in *Ricks* contradicts this conclusion, the court finds this contention to rest on a misinterpretation of *Ricks*. In *Ricks*, which addressed a university professor's Title VII claim following the denial of tenure, the district court originally determined that the limitations period commenced on June 26, 1974, the date that the professor was informed he would be offered a one-year terminal contract after being denied tenure. *Ricks*, 449 U.S. at 261-62. On appeal, the Third Circuit Court of Appeals disagreed with the district court and determined that June 30, 1975, the date the professor's one-year terminal contract was completed, was the appropriate date for the commencement of the limitations period. *Id.* The United States Supreme Court explicitly rejected the date advanced by the Third Circuit Court of Appeals, reasoning that because the only alleged unlawful employment practice, denial of tenure, occurred before the professor's termination date, "the limitations periods necessarily commence to run before that date." *Id.* at 259. However, with respect to the June 26, 1974 date advanced by the district court, the *Ricks* Court noted that it "[could not] say that this decision was erroneous," as the evidence indicated that "the College had established its official position–and made that position apparent to [the plaintiff]–no later than June 26, 1974." *Id.*

Based on this conclusion, Plaintiff contends that the *Ricks* case establishes that the operative date in this case should be February 28, 2011, the date Defendant provided Plaintiff with a letter communicating its intention to provide Plaintiff with a one-year terminal contract ending May 15,

8

2012. ECF No. 38 at 5. However, while the *Ricks* Court ultimately reversed the decision of the Third Circuit and remanded with instructions to reinstate the district court's decision, the Court did not make a definitive ruling with respect to the June 26, 1974 date relied upon by the district court. Instead, the *Ricks* Court specifically noted that "[w]e need not decide whether the District Court correctly focused on the June 26 date, rather than the date the Board communicated to Ricks its unfavorable tenure decision made at the March 13, 1974, meeting . . . [because] the Title VII . . . complaints were not timely filed even counting from the June 26 date." *Ricks*, 449 U.S. at 262 n.17. Because the later possible date, June 26, 1974, was outside of the time period for filing the suit, any earlier date would have been outside of the time period as well. Thus, the *Ricks* Court did not need address the whether the June 26, 1974 date was the appropriate date to begin the limitations period.

While the *Ricks* Court declined to identify the appropriate date for the limitations period, it did expressly hold that "the limitations period commence[s] to run when the tenure decision [is] made and [the plaintiff is] is notified." *Id.* at 259. The court finds that the tenure decision was made and communicated to Plaintiff on October 6, 2010 via the letter from Dr. Blackwell, well before the February 28, 2011 notice of his terminal contract. *See Lomako v. New York Inst. of Tech.*, 440 F. App'x 1, 2 (2d Cir. 2011) (finding the relevant accrual date for the plaintiff's Title VII claim was not when he received his terminal contract but was instead when he was first notified of the denial of his reappointment, as it was "this denial that led to the subsequent issuance of [the plaintiff's] terminal contract"). Because Plaintiff filed his administrative charge on August 25, 2011, more than 300 days after the decision to deny tenure was made and communicated to Plaintiff on October 6, 2010, the court finds that Plaintiff's Title VII claim is time-barred.

Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's Title VII

claim.

**B.  *Due Process Claim***

Defendant moves for summary judgment on Plaintiff's claim under the Due Process Clause of the United States and South Carolina Constitutions, contending that "[t]his claim fails as a matter of law under the undisputed material facts."  ECF No. 17-2 at 7.  In response, Plaintiff contends that the material facts support a finding that Defendant deprived Plaintiff of a constitutionally protected liberty or property interest.  ECF No. 27 at 8.

**1.  *Legal Standard***

The Fourteenth Amendment's Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  It is well settled that a public employee cannot invoke the procedural protections of the Due Process Clause unless the employee can establish that he has been deprived of a liberty or property interest protected by the clause.  *See Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988).  To establish a constitutionally protected property interest in a benefit, "a person clearly must have more than an abstract need or desire for [the benefit]" and must also "have more than a unilateral expectation of [the benefit]."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Instead, a person must "have a legitimate claim of entitlement" to the benefit.  *Id.*  Thus, in the employment context, a Plaintiff must show that he has a "legitimate claim of entitlement" to his job.  A determination of whether a plaintiff has a property interest in his job is a question of state law.  *See Bishop v. Wood*, 426 U.S. 341, 344 (1976) ("[T]he sufficiency of the claim of entitlement must be decided by reference to state law.").

To establish a constitutionally protected liberty interest, a plaintiff must show that a

defendant "made charges against him that might seriously damage his standing and associations in his community or otherwise imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Stone*, 855 F.2d at 173 n.5 (internal quotations omitted). "[B]oth the Supreme Court and [the Fourth Circuit] have consistently held that public employees' liberty interests are not implicated by harm to reputation alone." *Zepp v. Rehrmann*, 79 F.3d 381, 388 (4th Cir. 1996). Instead, to implicate a constitutionally protected liberty interest, defamatory statements must at least "imply the existence of serious character defects such as dishonesty or immorality . . . that might seriously damage [the plaintiff's] standing and associations in his community or foreclose[ ] his freedom to take advantage of other employment opportunities." *Id.* (internal quotations and citations omitted).

**2.** ***Magistrate Judge's Report and Recommendation***

The Magistrate Judge first addressed whether Plaintiff has demonstrated a constitutionally protected liberty or property interest. With respect to a property interest, the Magistrate Judge recognized that as a non-tenured professor and at-will employee, Plaintiff did not have "an enforceable expectation of continued employment." ECF No. 34 at 6. As such, the Magistrate Judge concluded that Plaintiff did not have a constitutionally protected property interest. *Id.*

With respect to a liberty interest, the Magistrate Judge first recognized that Plaintiff did not allege the deprivation of a liberty interest in his amended complaint. *Id.* at 6. However, the Magistrate Judge determined that even if Plaintiff had alleged such an interest, Plaintiff's allegations do not demonstrate a protected liberty interest. *Id.* Specifically, the Magistrate Judge noted that denial of tenure unaccompanied by any public disclosure of reasons that impugn the candidate's moral character or imply dishonesty does not implicate a protected liberty interest. *Id.* Further, to

11

the extent Plaintiff alleges certain defamatory statements made about his work performance, the Magistrate Judge concluded that the statements at issue do not "rise to the level of stigma necessary to implicate a liberty interest triggering the Due Process Clause." *Id.* at 7.

Finally, with respect to Plaintiff's contention that his due process rights were violated by Defendant's alleged failure to follow the state employee grievance procedures found in S.C. Code Ann. § 8-17-380 or the procedures found in Defendant's Faculty Handbook, the Magistrate Judge recognized that a public employer's violation of its own policies and procedures does not alone give rise to a due process claim. *Id.* Based on the foregoing, the Magistrate Judge concluded that Plaintiff's due process claim fails as a matter of law. Accordingly, the Magistrate Judge recommended granting Defendant's motion for summary judgment as to Plaintiff's due process claim.

### 3. *Objections*

Plaintiff first objects to the Magistrate Judge's conclusion that he has not demonstrated a constitutionally protected property interest. While Plaintiff acknowledges that the case authority cited by the Magistrate Judge supports a finding that his status as a non-tenured, at-will employee does not implicate a property interest, Plaintiff contends that his case is "distinguishable . . . due to the fact that the reason Plaintiff lacked tenure was due to discrimination based on his national origin in violation of Title VII." ECF No. 38 at 7.

Plaintiff next objects to the Magistrate Judge's conclusion that he has not demonstrated a constitutionally protected liberty interest. Plaintiff contends that "the facts alleged in Plaintiff's Amended complaint support a finding of a violation of Plaintiff's liberty interests." *Id.* More specifically, Plaintiff contends that the defamatory statements alleged in its state law defamation

claim "reach the level of stigma necessary to implicate a liberty interest triggering the Due Process Clause." *Id.* at 8.

Finally, Plaintiff objects to the Magistrate Judge's conclusion that his due process rights were not violated by Defendant's failure to follow the state employee grievance procedures and its own handbook procedures. Plaintiff contends that the case authority cited by the Magistrate Judge is distinguishable because here, unlike in the cases cited by the Magistrate Judge, Plaintiff has satisfied the prerequisite showing of deprivation of a protected liberty or property interest. Accordingly, Plaintiff contends that the court should reject the Magistrate Judge's Report and Recommendation and deny Defendant's motion for summary judgment as to Plaintiff's due process claim.

**4.** *Analysis*

After careful review of the record, the court concurs with the Magistrate Judge's recommendation that Plaintiff's due process claim is not viable. To determine whether Plaintiff has demonstrated a constitutionally protected property interest, the court must first consider Plaintiff's status as an employee of Defendant. Plaintiff is properly classified as a non-tenured, at-will employee, as he was employed by Defendant pursuant to a series of written contracts detailing employment for a fixed time period in an "at-will capacity" serving "at the pleasure of the President." *See* ECF Nos. 15-3, 15-4, 15-5*; Cape v. Greenville Cnty. Sch. Dist.*, 365 S.C. 316, 319, 618 S.E.2d 881, 883 (2005) (recognizing that an employee who is subject to a contract for a definite term is properly considered an at-will employee where the contract expressly contains an at-will termination provision). Plaintiff does not dispute this classification. *See* ECF No. 38 at 6-7.

Pursuant to Plaintiff's status as a non-tenured, at-will employee, the court finds that Plaintiff does not have a legitimate claim of entitlement to continued employment. *See Storrer v. Univ. of*

13

*S. Carolina*, 288 S.C. 555, 559, 343 S.E.2d 664, 666 (Ct. App. 1986) (finding that a non-tenured professor did not have a viable due process claim because he had "no property interest in continued employment and was thus not entitled to procedural due process"); *Temple v. Med. Univ. of S. Carolina*, C.A. 2:02-2104-18, 2004 WL 3317660, at *4 (D.S.C. Feb. 6, 2004), *aff'd*, 124 F. App'x 790 (4th Cir. 2005) (finding that a non-tenured professor employed pursuant to a series of one-year contracts had "no claim of an entitlement to continued employment" and thus had no viable due process claim). To the extent Plaintiff contends that his case is "distinguishable" from the above-cited cases due to his allegations of discrimination based on national origin, the court finds this contention does not provide Plaintiff with a legitimate claim of entitlement to continued employment. *See Wooten v. Clifton Forge Sch. Bd.*, 655 F.2d 552, 554-55 (4th Cir. 1981) (finding that a principal who was demoted failed to demonstrate a "legitimate entitlement to continued employment as a principal" despite asserting that the demotion was racially motivated). Accordingly, the court finds that Defendant's denial of Plaintiff's tenure does not implicate a constitutionally protected property interest.

With respect to a constitutionally protected liberty interest, the court recognizes that Plaintiff's amended complaint does not specifically allege deprivation of a constitutionally protected liberty interest. However, despite not specifically alleging deprivation of a liberty interest, Plaintiff contends that the allegations with respect to his state law defamation claim provide the grounds for a protected liberty interest. ECF No. 38 at 7. Even assuming that Plaintiff's defamation allegations allege a protected liberty interest, the court agrees with the Magistrate Judge's conclusion that the statements at issue do not give rise to a liberty interest triggering protections under the due process clause.

14

Defamation, by itself, is not actionable under the Due Process Clause. *See Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (holding that "[d]efamation, by itself . . . [is] not a constitutional deprivation" as "injury to reputation by itself [is] not a 'liberty' interest protected under the Fourteenth Amendment"). Instead, "the type of communication that gives rise to a protected liberty interest implies the existence of serious character defects such as dishonesty or immorality." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 308 (4th Cir. 2006) (internal quotations omitted).

Here, the statements that form the basis of Plaintiff's defamation claim were allegedly made by David Jamison, the Chair of the Department of Business Administration in which Plaintiff was employed. ECF No. 24 at 3. Plaintiff's complaint alleges that over the course of two years, Mr. Jamison made statements on numerous occasions that Plaintiff "was a poor faculty member and unworthy of tenure." *Id.* Accepting these allegations as true, statements that Plaintiff was a "poor faculty member" and "unworthy of tenure" do not rise to the level necessary to implicate a constitutionally protected liberty interest. *See Zepp*, 79 F.3d at 388 (finding that accusations which consisted at most of charges of "incompetence" or "unsatisfactory job performance" were not sufficient to implicate a protected liberty interest); *Robertson v. Rogers*, 679 F.2d 1090, 1091 (4th Cir. 1982) (declining to recognize a protected liberty interest arising from statements that a plaintiff was terminated for "incompetence and outside activities"); *Wojcik v. Massachusetts State Lottery Comm'n*, 300 F.3d 92, 103 (1st Cir. 2002) ("[S]tatements merely indicating the employee's improper or inadequate performance, incompetence, or neglect of duty are not sufficiently serious to trigger the liberty interest protected by the Constitution.").

Further, to the extent Plaintiff's objections contend that the alleged statements "do imply the existence of serious character defects," the court finds this contention to be without merit. *See*

15

*Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1184 (7th Cir. 2001) (finding statements that a plaintiff was denied tenure for failing to meet the university's "standards of scholarship" do not suggest the kind of moral turpitude or dishonesty that would give rise to a liberty interest claim). Accordingly, the court finds that the alleged statements do not implicate a constitutionally protected liberty interest triggering protections under the Due Process Clause.

Finally, with respect to Plaintiff's contentions that his due process rights were violated by Defendant's alleged failure to follow the state employee grievance procedures provided by S.C. Code Ann. § 8-17-380, the court finds that this alleged failure does not create a protected liberty or property interest. *See Bunting v. City of Columbia*, 639 F.2d 1090, 1094 (4th Cir. 1981) (recognizing that a due process claim is not viable based on a public employer's failure to follow state law procedures if the employee is at-will with no protected property interest in continued employment). Further, with respect to Plaintiff's contentions that his due process rights were violated by Defendant's alleged failure to follow its own Faculty Handbook procedures, the court finds that this allegation does not demonstrate a protected property or liberty interest, as a public employer's violation of its own procedures does not, by itself, give rise to a due process claim. *See Kilcoyne v. Morgan*, 664 F.2d 940, 942 (4th Cir. 1981) (recognizing that even if a university "gratuitously afford[s] tenure aspirants procedural safeguards not constitutionally mandated, deviations from those procedures [do] not support a claim under the Fourteenth Amendment"); *Henry-Davenport v. Sch. Dist. of Fairfield Cnty.*, 832 F. Supp. 2d 602, 611 (D.S.C. 2011), *aff'd*, 498 F. App'x 193 (4th Cir. 2012) ("[W]here an employee has no enforceable expectation in the deprived position or salary, grievance rights under employer polices cannot create a property interest.").

Based on the foregoing, the court finds that Plaintiff does not have a viable due process claim

16

based on either a protected property or liberty interest. Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's due process claim.

## C. *State Law Defamation Claim*

Having granted summary judgment in favor of Defendant as to both of Plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over Plaintiff's state law claim for defamation under the South Carolina Tort Claims Act, S.C. Code § 15-78-70. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction"). The court remands the case to state court pursuant to 28 U.S.C. § 1367(c)(3). *See Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) ("[U]nder the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case or, in cases removed from State court, to remand.").

## IV. CONCLUSION

The court concurs in the Magistrate Judge's Report and Recommendation and incorporates it herein by reference. For the reasons stated in the Report and Recommendation and herein, Defendant's motion for partial summary judgment, ECF No. 17, is **GRANTED**. Plaintiff's Title VII claim and due process claim are **DISMISSED**. Plaintiff's remaining state law defamation claim under the South Carolina Tort Claims Act, S.C. Code § 15-78-70, is **REMANDED** to state court.

**IT IS SO ORDERED.**

s/Margaret B. Seymour  
Margaret B. Seymour  
Senior United States District Judge

Columbia, South Carolina  
March 26, 2014